THOMAS, J.
Appellant appeals the trial court’s adjudication of delinquency, contending the court erred in denying his dispositive motion to suppress cannabis and drug paraphernalia found by police in Appellant’s home. Appellant argues the court erred, because the facts did not establish that the “emergency aid exception” justified a war-rantless search of the home. For the reasons explained below, we disagree and affirm.

*1116
Factual Background

Appellant and his friend got into a fight with Curtis Pierce, another resident of Appellant’s home. Someone made a 911 hang-up call, during which a disturbance or altercation was heard in the background. Two deputies were dispatched to the location of the call where they encountered Mr. Pierce outside of the residence. The deputies observed blood on his hands, but no injury. Mr. Pierce was uncooperative, evasive, angry, and irate while talking with the deputies. He eventually told them he had been in a fight at the residence, but claimed that the other participants had already left. Nevertheless, concerned about the safety of the other participants, the officers decided to enter the residence to check on the safety of anybody inside.
The deputies entered the home through an unlocked door in the garage. After loudly announcing their presence three or four times without receiving a response, the deputies entered the house, where they observed Appellant and his friend asleep on two couches. They also observed a bong pipe and a small baggie of marijuana on the coffee table, and noticed an odor of burnt marijuana in the air. As the deputies approached the sleeping juveniles, they observed that Appellant’s friend had a black eye and Appellant had a laceration on his head. The deputies awoke the two juveniles and quickly discovered that they were both intoxicated. After Appellant was apprised of his Miranda rights, he agreed to speak and admitted to possessing the marijuana.
At the adjudicatory hearing, Appellant moved to suppress the cannabis and drug paraphernalia, arguing that the deputies violated his Fourth Amendment right against unreasonable searches and seizures. Specifically, Appellant argued that any exigency “evaporated” when Mr. Pierce told the deputies that the other participants in the fight had left. The trial court found that the deputies’ entry into the home fit within the emergency aid exception to the Fourth Amendment’s prohibition against unreasonable searches and seizures, and it denied the motion.

Analysis

A trial court’s ruling on a motion to suppress is a mixed question of law and fact. Johnson v. State, 995 So.2d 1011, 1013 (Fla. 1st DCA 2008). The trial court’s findings of fact will be upheld if supported by competent, substantial evidence. Id. That “evidence and the reasonable inferences drawn therefrom must be viewed ‘in a light most favorable to affirming the trial court’s rulings.’ ” Id. (quoting Ingram v. State, 928 So.2d 423, 428 (Fla. 1st DCA 2006)). The application of the law to those facts is subject to de novo review. Id.

Emergency Exception to Warrant Requirement

“[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury” without running afoul of an occupant’s Fourth Amendment right against unreasonable searches and seizures. Brigham City, Utah v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). The Florida Supreme Court has recognized that the authority of the police to enter private property in the face of an emergency “ ‘is inherent in the very nature of their duties as peace officers and derives from the common law.’ ” Riggs v. State, 918 So.2d 274, 280 (Fla.2005) (quoting Zeigler v. State, 402 So.2d 365, 371 (Fla.1981)) (“The right of police to enter and investigate an emergency ... is inherent in the very nature of their duties as peace officers and derives from the com *1117 mon law.”). In Riggs, the supreme court rejected our contrary rationale in Eason v. State, 546 So.2d 57 (Fla. 1st DCA 1989), “to the extent it conflicts” with Riggs. Riggs, 918 So.2d at 276.
To justify an emergency entry into a home by police officers, the State must demonstrate that “an objectively reasonable basis exist[ed] for the officer to believe that there is an immediate need for police assistance for the protection of life....” Seibert v. State, 923 So.2d 460, 468 (Fla.2006); see also Brigham City, 547 U.S. at 404, 126 S.Ct. 1943. “It is immaterial whether an actual emergency existed in the residence; only the reasonableness of the officer’s belief at the time of entry is considered on review.” Seibert, 923 So.2d at 468. The “inquiry must be undertaken in light of the totality of the circumstances confronting the officers, including, in many cases, a need for an on-the-spot judgment based on incomplete information and sometimes ambiguous facts bearing upon the potential for serious consequences.” U.S. v. Martins, 413 F.3d 139, 147 (1st Cir.2005), cert. denied, 546 U.S. 1011, 126 S.Ct. 644, 163 L.Ed.2d 520 (2005); see also Seibert, 923 So.2d at 468; Riggs, 918 So.2d at 282.
In Riggs, the Florida Supreme Court applied a two-pronged analysis in determining the reasonableness of an emergency entry, considering first whether the officers had reasonable grounds to believe that there was an emergency situation, and second, whether the officers had reasonable grounds to connect the emergency to the property in question: 918 So.2d at 282. Therefore, in order for an emergency entry into a home to comport with the demands of the Fourth Amendment, the State must show that, in light of the totality of the circumstances, the officers reasonably believed both that a person was in danger and that entry into the home was a necessary step toward providing aid to the endangered person.
When police officers arrive at the source of a 911 call and find suspicious circumstances, they may enter the home even where a life-threatening emergency has not been positively identified. Seibert, 923 So.2d at 469. In Campbell v. State, 477 So.2d 1068, 1070 (Fla. 2d DCA 1985), the Second District held that when police are responding to a 911 call, they are justified in entering the location where that call was made “to facilitate their investigation of the emergency,” even if the occupant and person who made the call denies consent. Similarly, in State v. Barmeier, 878 So.2d 411 (Fla. 3d DCA 2004), the Third District held that when police are responding to a 911 call, they are justified in entering the location where the call was made, after not receiving any response to their knocks and announcements of their presence. In In re J.B., 621 So.2d 489 (Fla. 4th DCA 1993), the court held that because a 911 call may be a call for help, when police observe suspicious circumstances where the call was made, they have a duty to enter and investigate, even if the occupant attempts to deny them entry.
Evidence that is discovered during an emergency entry may be lawfully seized if the evidence was observed in plain view during the course of the emergency. In Seibert, the Florida Supreme Court explained that “ ‘if the police enter a home under exigent circumstances and, prior to making a determination that the exigency no longer exists, find contraband in plain view, they may lawfully seize the illegal items.’ ” Seibert, 923 So.2d at 470 (quoting Davis v. State, 834 So.2d 322, 327 (Fla. 5th DCA 2003)). This is because the officers are justified in being where they are, and the contraband is not the product of an additional unjustified search. *1118 “ ‘However, if the police determine the exigency that initially allowed their entry into the residence no longer exists, any subsequent search is illegal and any contraband discovered pursuant to the illegal search is inadmissible.’ ” Id. Therefore, when officers are in a home because of an exigent circumstance, any evidence which is in plain view during the duration of the exigency can be seized.
In this case, the deputies’ belief that a medical emergency existed was imminently reasonable. The 911 hang-up call indicated that a physical altercation of some kind had occurred, which supports a reasonable belief that the 911 hang-up call was a “call for help.” See In the Interest of J.B., 621 So.2d at 490. Here, the deputies arrived at the scene to find a man who was agitated, angry, and uncooperative, with blood on his hands, and he told the deputies he had been in a fight. These facts indicated that another person could be seriously hurt and in need of medical attention; therefore, the totality of the circumstances confronting the deputies gave them reasonable grounds to believe that an emergency existed.
The deputies’ belief that the emergency necessitated their immediate entry into the home was reasonable. Although Mr. Pierce stated that the other participants in the fight had left, he also stated that the fight had occurred at the home. Where the location of a potentially injured party is uncertain, and a witness is evasive or uncooperative, it is entirely reasonable to begin looking at the location where the injury is believed to have been incurred. Appellant argues that the emergency “evaporated” after Mr. Pierce identified the home as the location of the fight, because Mr. Pierce made a concerted effort to withhold consent from the deputies to enter the home, and in fact stated that the other participants had already left. However, “[t]he right of police to enter and investigate an emergency, without an accompanying intent either to seize or arrest, is inherent in the very nature of their duties as peace officers and derives from the common law.” Zeigler, 402 So.2d at 371 (emphasis added). Therefore, the totality of the circumstances demonstrated that immediate entry into the home was necessary to render aid to an injured party-
The deputies in this case found the contraband before alleviating their concerns regarding the safety of Appellant and his friend; therefore, the seizure was proper under the Fourth Amendment. As the deputies entered the living room, they immediately observed the contraband, before ascertaining the actual condition of Appellant and his friend. As the deputies approached the two young men, they observed that both had sustained injuries. Therefore, the exigency was not yet over when the deputies observed the contraband in plain view.

Conclusion

For the foregoing reasons, the deputies’ entry into Appellant’s home fits within the emergency aid exception to the Fourth Amendment’s prohibition against unreasonable searches and seizures, and the trial court’s adjudication of delinquency is affirmed.
AFFIRMED.
BENTON and CLARK, J., concur.